Brian A. Knutsen, WSBA No. 38806
Kampmeier & Knutsen, PLLC
221 S.E. 11th Avenue, Suite 217
Portland, Oregon 97214
Phone: (503) 841-6515

Paul A. Kampmeier, WSBA No. 31560
Kampmeier & Knutsen, PLLC
811 First Avenue, Suite 468
Seattle, Washington 98104
Phone: (206) 858-6983

Simone Anter, WSBA No. 52716
Columbia Riverkeeper
407 Portway Ave. Suite 301
Hood River, Oregon 97031
Phone: (541) 387-3030

*Attorneys for Plaintiff Columbia Riverkeeper*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| COLUMBIA RIVERKEEPER, | ) | No. 2:19-cv-00126 |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS; and LIEUTENANT GENERAL TODD T. SEMONITE, in his official capacity as the Commanding General and Chief of Engineers of the United States Army Corps of Engineers, | ) | |
| Defendants. | ) | |

COMPLAINT - 1

## I.   INTRODUCTION

1.      This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Columbia Riverkeeper seeks declaratory and injunctive relief to compel defendants the United States Army Corps of Engineers and Lieutenant General Todd T. Semonite, in his official capacity as the Commanding General and Chief of Engineers of the United States Army Corps of Engineers (collectively, the "Corps"), to comply with sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discontinuing unpermitted discharges of pollutants from the Chief Joseph Dam (the "Dam")[1] located on the Columbia River unless and until the Corps obtains a National Pollutant Discharge Elimination System ("NPDES") permit authorizing the discharges.

2.      The Corps owns and operates the hydroelectric Dam on the Columbia River that discharges pollutants, including oils, greases, other lubricants, and cooling water and the heat associated therewith. These discharges are not

---

[1] The term "Dam," as used herein, includes the Chief Joseph Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, and cranes.

COMPLAINT - 2

authorized by an NPDES permit and therefore violate section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## II.   JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Columbia Riverkeeper's claim under section 505(a) of the CWA, 33 U.S.C. § 1365(a), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1346(a)(2) (United States as Defendant). Section 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), authorizes the requested relief. The requested relief is also proper under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (injunctive relief).

4.      Section 505(a) of the CWA, 33 U.S.C. § 1365(a), waives the Corps' sovereign immunity for Columbia Riverkeeper's claim.

5.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2, Columbia Riverkeeper notified the Corps of its violations of the CWA and of Columbia Riverkeeper's intent to sue by letter dated and postmarked January 14, 2019 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(3), Columbia Riverkeeper provided copies of the Notice Letter to Lieutenant General Semonite, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of Region 10 of the EPA, the

COMPLAINT - 3

Attorney General of the United States, and the Director of the Washington Department of Ecology ("Ecology") by mailing copies to these individuals on January 14, 2019, via certified mail, return receipt requested.

6.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and the copies thereof were issued as described in the preceding paragraph.

7.    As of the filing of this complaint, neither EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations addressed in the Notice Letter and herein.

8.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to continue to occur. The Corps is in violation of the CWA.

9.    The source of the violations complained of is located in Douglas County, Washington, within the Eastern District of Washington, and venue is therefore appropriate in the Eastern District of Washington under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.    PARTIES

10.    Plaintiff Columbia Riverkeeper is suing on behalf of itself and its members. Columbia Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. The mission of Columbia Riverkeeper is to restore and

COMPLAINT - 4

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Columbia Riverkeeper operates scientific, educational, and legal programs aimed at protecting water quality, air quality, and habitat in the Columbia River Basin.

11.    Columbia Riverkeeper has representational standing to bring this action. Columbia Riverkeeper has over 16,000 members, many of which reside in Washington in the vicinity of waters affected by the Corps' illegal discharges of pollutants. Members of Columbia Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by the Corps' discharges. Columbia Riverkeeper's members use these areas for, *inter alia*, fishing, rafting, hiking, walking, windsurfing, photographing, boating, and observing wildlife. The environmental, health, aesthetic, and recreational interests of Columbia Riverkeeper's members have been, are being, and will be adversely affected by the Corps' illegal discharges of pollutants from the Dam and by the members' reasonable concerns related to the effects of the discharges. The members are further concerned that, because these discharges are not subject to an NPDES permit as required by the CWA, there are not sufficient restrictions imposed on, and monitoring and reporting of, the discharges to minimize the adverse water quality impacts of the discharges. These injuries are fairly traceable to the violations and redressable by the Court.

COMPLAINT - 5

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

12.     Columbia Riverkeeper has organizational standing to bring this action. Columbia Riverkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of the Columbia River and its tributaries. The Corps' failure to obtain an NPDES permit for its discharges has deprived Columbia Riverkeeper of information that would be required by the permit's monitoring and reporting conditions and available to Columbia Riverkeeper. This information would assist Columbia Riverkeeper in its efforts to educate and advocate for greater environmental protection. Thus, Columbia Riverkeeper's organizational interests have been adversely affected by the Corps' violations. These injuries are fairly traceable to the violations and redressable by the Court.

13.     Defendant United States Army Corps of Engineers is a federal agency, within the United States Department of Defense. The United States Army Corps of Engineers owns and/or operates the Dam.

14.     Defendant Lieutenant General Todd T. Semonite is the Commanding General and Chief of Engineers of the United States Army Corps of Engineers. Mr. Semonite is being sued in his official capacity. As the Commanding General and Chief of Engineers, Lieutenant General Semonite is responsible for ensuring the United States Army Corps of Engineers complies with applicable laws at the Dam.

//

COMPLAINT - 6

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

## IV.   LEGAL FRAMEWORK

15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful the discharge of any pollutant by any person unless authorized by, *inter alia*, an NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

16.    Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

17.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States including the territorial seas."

18.    Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

## V.   FACTUAL BACKGROUND

### The Affected Community & Environment

19.    The Columbia River is one of the West's great river systems. The river supports rich fishing traditions and provides water for communities, agriculture, recreation opportunities, and for hydroelectric dams. The Columbia

COMPLAINT - 7

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

River is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish caught locally. Rising water temperatures also threaten the health of salmon and other aquatic life that rely on cool water for survival.

20.    In 2006 EPA designated the Columbia River Basin a Critical Large Aquatic Ecosystem because toxic contamination and other pollution are so severe. In 2009 EPA released an in-depth report on toxic pollution in the Columbia River, the *Columbia River Basin: State of River Report for Toxics*.[2] EPA's report concluded that harmful pollutants are moving up the food chain, impacting humans, fish, and wildlife. As the report explains, "[i]n 1992, an EPA national survey of contaminants in fish in the United States alerted EPA and others to a potential health threat to tribal and other people who eat fish from the Columbia River Basin." This survey prompted further study on the contaminated fish and the potential impacts on tribal members.

//

---

[2] U.S. EPA, *Columbia River Basin State of River Report for Toxics* (hereafter *State of the River Report*) (January 2009), https://www.epa.gov/columbiariver/2009-state-river-report-toxics).

COMPLAINT - 8

21.     In particular, EPA funded four Columbia River Tribes, through the Columbia River Intertribal Fish Commission ("CRITFC"), to study contaminant levels in fish caught at traditional fishing sites.[3] The study demonstrated the presence of 92 toxic chemicals in fish consumed by tribal members, resulting in a 50-fold increase in cancer risk among tribal members whose diets rely on river-caught fish. Contaminants found in these fish include PCBs, dioxins, furans, arsenic, mercury, and DDE, a toxic breakdown product of DDT.[4]

22.     The CRITFC study is not alone in demonstrating the serious problem of toxic contamination. From 1989 to 1995, the Lower Columbia River Bi-State Water Quality Program ("Bi-State Program") generated substantial evidence showing that water and sediment in the Lower Columbia River and its tributaries have levels of toxic contaminants that are harmful to fish and wildlife.[5] The Bi-State Program concluded that:

---

[3] *State of the River Report,* at 4.

[4] *Id.* at 19.

[5] Lower Columbia River Estuary Partnership. 2007. *Lower Columbia River and Estuary Ecosystem Monitoring: Water Quality and Salmon Sampling Report* at 1.

COMPLAINT - 9

- Dioxins and furans, metals, PCBs, PAHs, and pesticides impair the water sediment, and fish and wildlife;

- Arsenic, a human carcinogen, exceeded both EPA ambient water criteria for protection of human health and the EPA human health advisories for drinking water;

- Beneficial uses such as fishing, shellfishing, wildlife, and water sports are impaired;

- Many toxic contaminants are moving up the food chain and accumulating in the bodies of animals and humans that eat fish;

- People who eat fish from the lower Columbia over a long period of time are exposed to health risks from arsenic, PCBs, dioxins and furans, and DDT and its breakdown products.[6]

23.    Other studies have confirmed and added to the overwhelming scientific evidence on toxic contamination on the Columbia River Basin.[7]

//

---

[6] *Id.* at 5–6.

[7] *Id.* at 6 (citing studies by USGS, the U.S. Army Corps of Engineers, DEQ, and others); *see generally* U.S. EPA, *State of the River Report.*

COMPLAINT - 10

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

24.    The pollution discharges that are the subject of this complaint contribute to the pollution crisis on the Columbia River. According to the National Oceanic & Atmospheric Administration ("NOAA"): "Spilled oil can harm living things because its chemical constituents are poisonous. This can affect organisms both from internal exposure to oil through ingestion or inhalation and from external exposure through skin and eye irritation. Oil can also smother some small species of fish or invertebrates and coat feathers and fur, reducing birds' and mammals' ability to maintain their body temperatures."[8]

25.    The vicinity of the Dam that is the subject of this complaint and the Columbia River are used by the citizens of Washington and visitors, as well as by Columbia Riverkeeper's members, for recreational activities. Columbia Riverkeeper's members also derive aesthetic benefits from the receiving waters. Columbia Riverkeeper's members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters, shorelines, air and the nearby areas, and by the Corps' contributions to such polluted state.

---

[8] NOAA, Office of Response and Restoration, *How Oil Effects Fish and Wildlife in Marine Environments,* http://response.restoration.noaa.gov/oil-and-chemical-spills/oil-spills/how-oil- harms-animals-and-plants-marine-environments.html.

COMPLAINT - 11

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

### The Corps' Dam and Discharges of Pollutants

26.    The Corps owns and operates the hydroelectric Dam on the Columbia River.

27.    The Dam is located on the Columbia River approximately two miles southeast of the city of Bridgeport, Washington. The Dam is located within and discharges pollutants to waters within Douglas County, Washington.

28.    The Columbia River is a navigable water body at the location of the Dam.

29.    Upon information and belief, the Corps discharges oils, greases, lubricants, and other pollutants at the Dam collected from various sources through sumps and other systems. These discharges have occurred each and every day during the six years and sixty days prior to the filing of this complaint and are continuing to occur and/or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

30.    Upon information and belief, the Corps discharges from the Dam cooling water, and the associated heat, used to cool a variety of Dam components and materials. These discharges have occurred each and every day during the six years and sixty days prior to the filing of this complaint and are continuing to occur and/or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

COMPLAINT - 12

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

31.     Upon information and belief, the Corps utilizes Francis turbines, which discharge grease to the Columbia River. Wicket gates control the amount of water flowing through the turbines at the Dam. The wicket gate bearings are lubricated with grease or another lubricant. This grease or lubricant is continuously fed into bearings and discharged to surface waters. These discharges have occurred each and every day during the six years and sixty days prior to the filing of this complaint and are continuing to occur or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

32.     Upon information and belief, the Corps also discharges oils, greases, lubricants, and other pollutants from the Dam due to spills, equipment failures, operator errors, and other similar events. For example, oil was spilled from the Dam on or about September 29, 2017, and on or about March 4, 2018, due to failures. Discharges of this nature at the Dam are continuing to occur and/or are reasonably likely to reoccur. These discharges are not authorized by an NPDES permit.

33.     The discharges from the Dam described herein are made from pipes and/or other discernible, confined, and/or discrete conveyances.

34.     The discharges from the Dam described herein are discharges of pollutants to navigable waters from point sources that violate section 301(a) of the

COMPLAINT - 13

KAMPMEIER & KNUTSEN, PLLC
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
(503) 841-6515

CWA, 33 U.S.C. § 1311(a), when made without the authorization of a NPDES permit.

35.    The Corps' violations were avoidable had the Corp been diligent in overseeing facility operations and maintenance and regulatory compliance.

36.    In accordance with section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Columbia Riverkeeper will mail copies of this complaint that are either filed and date-stamped copies or conformed copies to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.    CAUSE OF ACTION

37.    Columbia Riverkeeper realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

38.    The Corps is in violation of section 301(a) of CWA, 33 U.S.C. § 1311(a), by discharging pollutants to navigable waters from the Dam as described herein without an NPDES permit. These violations are violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f).

39.    Upon information and belief, these violations committed by the Corps are continuing and/or are reasonable likely to reoccur. Any and all additional violations of the CWA which occur after those described in the Notice Letter but

COMPLAINT - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

before a final decision in this action should be considered continuing violations subject to this complaint.

## VII.    RELIEF REQUESTED

Wherefore, Columbia Riverkeeper respectfully requests that this Court grant the following relief:

A.    Issue a declaratory judgment that the Corps has violated and continues to be in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from the Dam to the Columbia River without the authorization of an NPDES permit as described herein;

B.    Issue an injunction enjoining the Corps from discharging pollutants from the Dam to the Columbia River as described herein until such discharges are authorized aby an NPDES permit;

C.    Issue an injunction requiring the Corps to take specific actions to evaluate and remediate the environmental harm caused by its violations;

D.    Grant such other preliminary and/or permanent injunctive relief as Columbia Riverkeeper may from time to time request during the pendency of this case;

E.    Award Columbia Riverkeeper its costs of litigation, including reasonable attorney and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

COMPLAINT - 15

F.      Grant such additional relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 15th day of April, 2019.

KAMPMEIER & KNUTSEN, PLLC

By: s/ Brian A. Knutsen
        Brian A. Knutsen, WSBA No. 38806
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
Tel: (503) 841-6515
Email: brian@kampmeierknutsen.com

Paul A. Kampmeier, WSBA No. 31560
811 First Avenue, Suite 468
Seattle, Washington 98104
Tel: (206) 858-6983
Email: paul@kampmeierknutsen.com


COLUMBIA RIVERKEEPER

Simone Anter, WSBA No. 52716
407 Portway Ave. Suite 301
Hood River, OR 97031
Phone: (541) 387-3030
Email: simone@columbiariverkeeper.org

*Attorneys for plaintiff Columbia Riverkeeper*

COMPLAINT - 16

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

January 14, 2019

**Via CERTIFIED MAIL – Return Receipt Requested**
Lieutenant General Todd T. Semonite
Commanding General & Chief of Engineers
U.S. Army Corps of Engineers
441 G Street N.W.
Washington, D.C. 20314-1000

Re:    **NOTICE OF INTENT TO SUE THE U.S. ARMY CORPS OF ENGINEERS AND LIEUTENANT GENERAL SEMONITE UNDER THE CLEAN WATER ACT**

Dear Lieutenant General Semonite:

This letter is to provide you with sixty days notice of Columbia Riverkeeper's ("Riverkeeper") intent to file a citizen suit against the United States Army Corps of Engineers and Lieutenant General Todd T. Semonite, in his official capacity as the Commanding General and Chief of Engineers of the United States Army Corps of Engineers (collectively, the "Corps"), under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described herein. The CWA prohibits any person from discharging any pollutant to waters of the United States except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit. Continuing to discharge pollutants without securing an NPDES permit constitutes an ongoing violation of the CWA.

The Corps has and continues to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States and to the State of Washington from the Chief Joseph Dam and from its associated structures and facilities (collectively "Dam").[1] Specifically, the Corps discharges oils, greases, other lubricants, and cooling water from the Dam without the authorization of an NPDES permit in violation of the CWA.

This notice of intent to sue is part of Riverkeeper's effort to protect people who rely on the Columbia River for uses including drinking water, food, and recreation. Riverkeeper's mission is to protect and restore the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. The organization's strategy for protecting the

---

[1] The term "Dam," as used herein, includes the Chief Joseph Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, and cranes. The approximate location of the Dam is identified in Appendix 1.

Columbia River and its tributaries includes working in river communities and enforcing laws that protect public health, salmon, and other fish and wildlife.

## I.      Legal Background.

Washington's rivers, and the use of rivers by people, fish, and wildlife, are protected by both federal and state law. In 1972, Congress passed the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA is the cornerstone of surface water quality protection in the United States. In the forty years since its passage, the CWA has dramatically increased the number of waterways that are once again safe for fishing and swimming. Despite the great progress in reducing water pollution, many of the Nation's waters still do not meet the water quality goals. In fact, the vast majority of rivers and streams in Washington fail to meet basic state water quality standards for pollutants such as toxics and temperature.[2] These standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water.

The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See* 33 U.S.C. §§ 1311, 1342, 1318. Every year, EPA and the state of Washington issue hundreds of permits for pollution discharges into the Columbia and Snake Rivers. These include permits that regulate the discharge of toxic pollution, hot water, bacteria, and other pollutants. According to EPA, improvements to the quality of water in our rivers are directly linked to the implementation of the NPDES program and the associated control of pollutants discharged from both municipal and industrial point sources.[3]

## II.     The Heavy Toll of Pollution on the Columbia River.

The Columbia River is one of the West's greatest river systems. This river supports rich fishing traditions, provides water for communities and agriculture, recreation opportunities, and power for hydroelectric dams. The river is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish caught locally. Rising water temperatures also threaten the health of salmon and other aquatic life that rely on cool water for survival.

EPA designated the Columbia River Basin a Critical Large Aquatic Ecosystem in 2006 because toxic contamination and other pollution is so severe. In 2009, EPA released an in-depth report on toxic pollution in the Columbia, the *Columbia River Basin: State of River Report for*

---

[2] *See* State of Washington 303(d) List, available at https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-state-waters-303d; State of Oregon 303(d) List, available at https://www.deq.state.or.us/wq/assessment/rpt2010/results303d10.asp.

[3] U.S. EPA, *Water Permitting 101* at 11, http://www.epa.gov/npdes/pubs/101pape.pdf.

*Toxics.*[4] EPA's report concluded that harmful pollutants are moving up the food chain, impacting humans, fish, and wildlife. As the report explains, "[i]n 1992, an EPA national survey of contaminants in fish in the United States alerted EPA and others to a potential health threat to tribal and other people who eat fish from the Columbia River Basin." This survey prompted further study on the contaminated fish and the potential impacts on tribal members.

In particular, EPA funded four Columbia River tribes, through the Columbia River Intertribal Fish Commission ("CRITFC"), to study contaminant levels in fish caught at traditional fishing sites.[5] The study demonstrated the presence of 92 toxic chemicals in fish consumed by tribal members, resulting in a 50-fold increase in cancer risk among tribal members whose diets rely on river-caught fish. Contaminants found in these fish include PCBs, dioxins, furans, arsenic, mercury, and DDE, a toxic breakdown product of DDT.[6]

The CRITFC study is not alone in demonstrating the serious problem of toxic contamination.  From 1989 to 1995, the Lower Columbia River Bi-State Water Quality Program ("Bi-State Program") generated substantial evidence demonstrating that water and sediment in the Lower Columbia River and its tributaries have levels of toxic contaminants that are harmful to fish and wildlife.[7] The Bi-State Program concluded that:

- Dioxins and furans, metals, PCBs, PAHs, and pesticides impair the water sediment, and fish and wildlife;
- Arsenic, a human carcinogen, exceeded both EPA ambient water criteria for protection of human health and the EPA human health advisories for drinking water;
- Beneficial uses such as fishing, shellfishing, wildlife, and water sports are impaired;
- Many toxic contaminants are moving up the food chain and accumulating in the bodies of animals and humans that eat fish;
- People who eat fish from the lower Columbia over a long period of time are exposed to health risks from arsenic, PCBs, dioxins and furans, and DDT and its breakdown products.[8]

---

[4] U.S. EPA, *Columbia River Basin State of River Report for Toxics* (hereafter *State of the River Report*) (January 2009), https://www.epa.gov/columbiariver/2009-state-river-report-toxics).

[5] *Id.* at 3.

[6] *Id.* at 19.

[7] Lower Columbia River Estuary Partnership.  2007.  *Lower Columbia River and Estuary Ecosystem Monitoring: Water Quality and Salmon Sampling Report* at 1.

[8] *Id.* at 5 - 6.

Other studies have confirmed and added to the overwhelming scientific evidence on toxic contamination in the Columbia River Basin.[9]

Pollution discharges from the Corps' Dam contribute to the pollution crisis on the Columbia River. According to the National Oceanic & Atmospheric Administration ("NOAA"):

> Spilled oil can harm living things because its chemical constituents are poisonous. This can affect organisms both from internal exposure to oil through ingestion or inhalation and from external exposure through skin and eye irritation. Oil can also smother some small species of fish or invertebrates and coat feathers and fur, reducing birds' and mammals' ability to maintain their body temperatures.[10]

The impacts of oil pollution are sobering. Yet the Corps discharges oil and other pollution from the Dam without the NPDES permit authorization required by the CWA. In turn, the Corps fails to monitor and report pollution in a manner that enables the public to fully understand the extent and severity of the problem.

The Dam also discharges heat in the form of cooling water to a river system recognized by EPA as too warm to support designated uses, including salmon habitat. Salmon need cool water to survive. Nearly two decades ago, federal scientists declared the Columbia River too hot for healthy salmon runs. Hot water pollution from point sources, including the Dam, contributes to elevated water temperatures in the Columbia River. Specifically, the Corps uses water to cool a variety of Dam components and materials, including turbines, generators, transformers, and lubricating oils. The Corps discharges this cooling water directly to the Columbia River.

The devastating impact of hot water pollution on the Columbia River is not hypothetical. Northwest rivers had unreasonably high temperatures in summer 2015, warm enough to kill thousands of migrating sockeye salmon headed to the mid-Columbia and lower Snake Rivers. Scientists estimate that more than 277,000 sockeye, about 55 percent of the total run, returning from the ocean to spawn died in the Columbia and Snake Rivers due to warm water temperatures in 2015. The Fish Passage Center, which provides technical assistance and information to fish and wildlife agencies, concluded that higher water temperatures in the Columbia and Snake Rivers are largely due to dams.[11] Dams heat the river by decreasing river flow and creating huge,

---

[9] *Id.* at 6 (citing studies by USGS, the U.S. Army Corps of Engineers, DEQ, and others); *see generally* U.S. EPA, *State of the River Report*.

[10] NOAA, Office of Response and Restoration, *How Oil Effects Fish and Wildlife in Marine Environments,* http://response.restoration.noaa.gov/oil-and-chemical-spills/oil-spills/how-oil-harms-animals-and-plants-marine-environments.html.

[11] Fish Passage Center, Memorandum on Water Temperature Issues in The Columbia and Snake Rivers (Oct. 28, 2015), http://www.fpc.org/documents/memos/159-15.pdf.

stagnant reservoirs.[12] The Corps discharges cooling water from the Dam, which contributes warm water to a river that is already too warm to support healthy fish populations.

### III.    Unpermitted Pollutant Discharges from the Dams.

Section 301(a) of the CWA prohibits discharges of oils, greases, lubricants, cooling water, and other pollutants to the Columbia River from the Dam without NPDES permit authorization. 33 U.S.C. § 1311(a). Without an NPDES permit, the Corps is failing to monitor, report, and reduce pollution discharges pursuant to the CWA and state and federal implementing rules.

#### A.    Chronic Pollutant Discharges from the Dam.

The Dam discharges oils, greases, lubricants, and other pollutants collected from various sources through sumps, including powerhouse drainage sumps, unwatering sumps, spillway sumps, and other systems. The Corps violates section 301(a) of the CWA by discharging pollutants from these various drainage and/or un-watering sumps and other systems at the Dam. These violations occurred each and every time the Corps made these discharges in the past six years and continue to occur.[13]

The Dam discharges cooling water, and the associated heat, used to cool a variety of Dam components and materials, including turbines, generators, transformers, and lubricating oils. The Corps is in violation of section 301(a) of the CWA by discharging cooling water, and the associated heart, from the Dam each and every day for the past six years.

The Dam utilizes Francis turbines, which discharge grease to the Columbia River. Wicket gates control the amount of water flowing through the turbines at the Dam. The Wicket gate bearings are lubricated with grease or another lubricant. This grease or lubricant is continuously fed into the bearings and discharged directly into surface waters. The Corps is in violation of section 301(a) of the CWA by discharging grease or lubricant from the bearings at each of the turbine wicket gates at the Dam each and every day for the past six years.

#### B.    Acute Pollutant Discharges from the Dams.

The Corps violates section 301(a) of the CWA every time it discharges oil, a lubricant, or other pollutants to the Columbia River from the Dam. Riverkeeper requested public records detailing oil spills and other discharges from the Dam. Riverkeeper also reviewed the United

---

[12] While government experts identify dams as a major source of heat pollution in the Columbia River, Riverkeeper's notice of intent to sue limits heat related discharge allegations to point source discharges of cooling water.

[13] The Corps is in the best position to know the specific location of the point sources (*i.e.* the structures that discharge pollutants from drainage sumps, unwatering sumps, spillway sumps, and other systems into the Columbia River) at the Dam.

Sates Coast Guard's National Response Center Website, which maintains a national database of oil spills. Table 1 describes reported acute pollution discharges from the Dam to the Columbia River during the last six years. Riverkeeper does not concede that the amount of pollution reported is, in fact, the amount of pollution actually discharged from the Dams.

| Table 1 Chief Joseph Dam Reported Discharges | | | |
|---|---|---|---|
| Reported Date of Discharge | Reported Pollutant Discharged | Reported Amount Discharged | Comments from Discharge Report |
| 6/17/14 | Oil | 5-10 gallons | 5-10 gallons spilled at hydraulic gate, no oil released outside of the dam; later estimated that only 1 gallon spilled and none reached the river. |
| 9/3/14 | Paint Primer | 1 cup | Contractor spilled approximately 1 cup of paint primer into the Columbia River. |
| 11/17/14 | Hydraulic Oil | 1 gallon | The oil spilled was an aromatic oil used as an antifreeze agent in the lines supporting the gates. |
| 12/9/16 | Petroleum-based Heat Transfer Fluid | Less than 10 gallons | Heat transfer fluid released from a gate seal heater system due to an unknown cause. |
| 9/29/17 | Transformer Oil | 787 gallons spilled, unclear how much made it into the River. | Approximately 1,000 gallons of transformer oil spilled to containment and then to a sump. A skimmer has been placed in the sump, which has recovered some of the oil. The dam has also increased the water level in the sump to try to prevent the oil trapping in the sump from being discharged to the Columbia River. |
| 10/5/17 | Vegetable Oil | 2 tablespoons, 20x20ft sheen | Water level adjustments were being made and resulted in a small release of oil. |
| 12/11/17 | Chevron Clarity ISO32 Hydraulic Oil | Sheen, 1 quart | Caller stated that a sheen of chevron clarity ISO32 hydraulic oil released from the water sump into the Columbia River. This was due to a leaking gate cylinder. |
| 3/4/18 | Group 2 Mineral Oil | 10-20 gallons | While performing maintenance on a turbine, a pipe/line broke and spilled approximately 50 gallons of oil into mechanical workings. A drum skimmer and pad were used to recover 30-40 gallons. 10-20 gallons of oil remain in the draft tube and are scheduled to be released into the Columbia. |
| 4/24/18 | Diesel Oil | ½ cup, 20x20ft sheen | Diesel oil to water due to a faulty o-ring. |
| 5/1/18 | Heat Transfer Fluid | 1 gallon | Hydraulic oil spilled from a pipe associated with the dam's gate seal heating system. |
| 6/6/18 | Hydraulic Oil | Sheen, 1 gallon | Dam's barge leaked on the ramp hydraulic system. Caused a 60x60ft sheen. |

## IV.   Public Documents Announce the Need for an NPDES Permit for Dam Discharges.

The Corps should be aware that the CWA prohibits its discharges of oil, greases, lubricants, cooling water, and other pollution to the Columbia River from the Dam absent an NPDES permit. Notably, Riverkeeper sued the Corps in 2012 for failing to obtain pollution discharge permits for eight other Columbia River and Snake River dams (Bonneville, The

Dalles, Ice Harbor, John Day, Little Goose, Lower Monumental, McNary, Lower Granite).[14] As the Corps is aware, that case was resolved in 2014 through a settlement agreement requiring the Corps to:

1. Apply to EPA for NPDES discharge permits;
2. Investigate using less harmful lubricants in dam equipment; and
3. Monitor the type and quantity of pollution being discharged into the rivers.[15]

The Corps applied for the NPDES permits for the dams subject to that settlement agreement and EPA is in the process of drafting permits for them. Furthermore, Riverkeeper reached a settlement with the United States Bureau of Reclamation ("Bureau") in 2017 that requires the Bureau to join its federal partners at the Corps to investigate replacing toxic oil at the Grand Coulee Dam, also on the Columbia River, with eco-friendly lubricants or switch to using non-lubricated equipment.[16] The Bureau also committed to apply for an NPDES permit for pollution discharges from the Grand Coulee Dam.

Although the Corps and the Bureau, agreed to apply for NPDES permits for the above dams, the Corps still has not applied for an NPDES permit for the Chief Joseph Dam.

Furthermore, EPA requires permits for the exact kinds of discharges occurring at the Dam. On April 27, 2018, EPA promulgated a draft NPDES General Permit for pollutant discharges from hydroelectric generating facilities in Idaho.[17]  The draft permit authorizes five categories of discharges. The permit "establishes effluent limitations for:

1. pH, oil and grease, and monitoring requirements for temperature and flow for discharges of noncontact cooling water and equipment-related cooling water systems.
2. pH, oil and grease, and monitoring requirements for flow for discharges from equipment and floor drains.

---

[14] COLUMBIA RIVERKEEPER, STOPPING OIL POLLUTION FROM DAMS, https://www.columbiariverkeeper.org/our-work-saving-salmon/stopping-oil-pollution-dams (last visited July 24, 2018).

[15] *Id.*

[16] COLUMBIA RIVERKEEPER, GRAND COULEE DAM SETTLEMENT, https://www.columbiariverkeeper.org/news/2017/1/grand-coulee-dam-settlement (last visited August 27, 2018).

[17] THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NPDES FACT SHEET: WASTEWATER DISCHARGES FROM HYDROELECTRIC GENERATING FACILITIES GENERAL PERMIT (2018) available at https://www.epa.gov/sites/production/files/2018-04/documents/r10-npdes-idaho-hydroelectric-gp-idg360000-fact-sheet-2018.pdf

3.  pH, oil and grease, and monitoring requirements for flow for discharges from equipment and facility maintenance–related water.
4.  pH, oil and grease, and monitoring requirements for flow for discharges from maintenance-related water during flood/high water events and equipment related back wash water from strainer screens.
5.  pH, oil and grease, and monitoring requirements for flow and temperature for discharges from any combination of the following: equipment-related cooling water, equipment and floor drain water, maintenance-related water, maintenance-related water from flood/high water events and for equipment related backwash strainer water."[18]

According to the EPA:

> Most discharges that affect water quality are ancillary to the direct process of generating electricity at a hydroelectric facility and result mostly from oil spills, equipment leaks, and improper storage. The General Permit is proposing to require development and implementation of a Best Management Practices (BMP) Plan to minimize or eliminate the discharge of oil and grease and an annual self-certification report demonstrating compliance with the BMP Plan.[19]

In short, the Corps has been aware since long before this notice of intent to sue letter that discharges associated with the Dam require an NPDES permit. Yet, based upon the information available to Riverkeeper, the Corps has neither applied for nor obtained an NPDES permit for discharges of oils, greases, lubricants, cooling water, and other pollution from the Dam.

## V.    Party Giving Notice of Intent to Sue.

The full name, address, and telephone number of the party giving notice is:

Columbia Riverkeeper
407 Portway Ave. Suite 301
Hood River, OR 97031
(541) 387-3030

---

[18] *Id.* at 14.

[19] *Id.* at 15.

VI.     **Attorneys Representing Riverkeeper.**

The attorneys representing Riverkeeper in this matter are:

Brian A. Knutsen
Kampmeier & Knutsen, PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515
brian@kampmeierknutsen.com

Lauren Goldberg, Legal and Program Director
Columbia Riverkeeper
407 Portway Ave. Suit 301
Hood River, OR 97031
(541) 965-0985
lauren@columbiariverkeeper.org
(Licensed in Oregon)

Simone Anter, Associate Attorney
Columbia Riverkeeper
407 Portway Ave. Suit 301
Hood River, OR 97031
(541) 399-5312
simone@columbiariverkeeper.org

VII.    **Conclusion.**

The violations described herein reflect those indicated by the information currently available to Riverkeeper. Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice of intent to sue.

Riverkeeper intends to seek injunctive relief to prevent further CWA violations under sections 505(a) and (d) of the CWA, 33 U.S.C § 1365(a) and (d), and such other relief as is permitted by law. Riverkeeper will further seek to recover its litigation expenses as authorized by section 505(d) of the CWA, 33 USC § 1365(d).

Riverkeeper believes that this notice of intent to sue sufficiently states grounds for filing suit. Riverkeeper intends to file a citizen suit against the United States Army Corps of Engineers and Lieutenant General Todd T. Semonite, in his official capacity as the Commanding General and Chief of Engineers of the United States Army Corps of Engineers, under section 505(a) of the CWA, 33 U.S.C. § 1365(a), for the violations described herein at the expiration of the sixty-day notice period or shortly thereafter.

Riverkeeper is willing to discuss effective remedies for the violations addressed in this notice of intent to sue letter and appropriate settlement terms.  Please direct all correspondence to Brian A. Knutsen at (503) 841-6515 or brian@kampmeierknutsen.com.

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _____
Brian A. Knutsen
Lauren Goldberg
Simone Anter

10

# APPENDIX I

Chief Joseph Dam: Bridgeport, Washington 98813
Coordinates: 47°59′43″N  119°38′04″W

Map:



## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of the United States that I am counsel for Columbia Riverkeeper and that on January 14, 2019, I caused copies of the foregoing Notice of Intent to Sue the U.S. Army Corps of Engineers and Lieutenant General Semonite Under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Lieutenant General Todd T. Semonite
Commanding General & Chief of Engineers
U.S. Army Corps of Engineers
441 G Street N.W.
Washington, D.C. 20314-1000

Acting Attorney General Matthew G. Whitaker
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Acting Administrator Andrew Wheeler
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington DC 20460

Regional Administrator Chris Hladick
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Mail Code RA-210
Seattle, WA 98101

Director Maia D. Bellon
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Brian A. Knutsen